Fleming J.
In this case, there is a great contrariety of evidence. The arbitrators gave Roderick MiRae half of the ticket, and Philip MiRae avers, that he claimed no more. But the declaration demands the whole, and it is probable that the verdict ivas for the whole, since the amount of the damages very little exceeds the price affixed to the property by the scheme of the lottery. To explain the principles by which the jury were governed, two of that body have been examined, and they differ from each other upon the main point. Objections were made to the examinations of the jurors ; but it is not only usual, but I think proper, to admit such evidence, for the purpose of discovering errors which the jury may *111 have committed. In this case, I should not feel an Inclination to be over scrupulous in admitting testimonv, when I reflect, that the appellant .acquiesced for fifteen years without asserting his right to the property in question, until better evidence might be lost. I am well satisfied that Philip M'Rea is entitled only to one-fourth of the ticket, independently of the award and evidence of the juror. He has recovered one-half, if not the whole | and as I can discover no standard by which to decree him what he is really intitled to, there seems to be no way left but the one adopted by the Chancellor to do essential justice to the parties. I am therefore of opinion that the decree is right.
Lyons^L — I think this case has come up too early. The Chancellor does not set aside the former verdict, but only directs an issue to be tried to satisfy his conscience. The question tried and decided by the jury was the right of the appellant to the ticket. The possession was considered, and certainly was at Law, primo.’■ facie evidence of title. But the question is, did the jury give a verdict for the whole of the ticket, or for a part, and for what part ? How was the Chancellor to ascertain this with certainty ? It is admitted that the appellant was not entitled to the whole. No way remained but to direct an issue to try the question for the information of his conscience.
But before the issue is tried, and before it is known what would be the decree of the Chancellor, the party appeals. Ought the Chancellen' to be restrained from directing issues to inform him whether a fact be one way or the other ? Surely not, and therefore the appeal in this case is certainly premature. The inquiry is merely as to the extent of Philip IPfcMae^s right. It is nothing to the Court of Equity how Philip M‘Rae came by the ticket; but it is essential to know to what part he is entitled, and the value of it At present, it is impossible for the Court to ascertain that point. I therefore think the decree right.
The President.- — As I ara of opinion that the *112 appellant had no ground to come here at all, I shall not inquire whether he has done it too early not. Amidst the clashing testimony in the cause, it is evident to me, that Philip M'-Rae had not a right to more than a fourth. As soon as the lottery was drawn, the two MiRae>s began to dispute respecting this ticket. My own impressions are, that Philip M'-Rae has no right at all; but I would not for this reason award a new trial, since the verdict, which has been fairly found, is in his favor : But the extent of his right is not ascertained.
If then Philip M'-Rae was entitled to no more than a fourth, the verdict which gives him much more ought to be corrected. We were anxious to do this, if we could, without disturbing the verdict. But we could discover no certain standard by which the Court could make the correction. We looked for it in vain in the value affixed to the property in the scheme of the lottery. We then looked for .it in the sales, with no better success. The next chance was the verdict; but that appears to be for the whole, because the declaration claims the whole. We next referred to the testimony of the jurors ; but they differ upon the subject. The appellant attempted to account for the sum found by the verdict, by supposing, that the jury had allowed interest upon the claim, because they ought to have done so but this is equally unsatisfactory. It is entirely discretionary with a jury, whether they will give interest or not. And whether they meant to give it, is perfectly uncertain. My own- opinion is, that in this case, interest ought not to have been allowed. Woods gave notice to Philip M'-Rae that he would not convey to him ; but having, together with Mullins, (sold their interest to Roderick M‘Rae, he made a conveyance to him. In 1771, the land is sold as the property of Roderick ; it is advertised in the neighbourhood of Philip, and the property is passed from hand to hand ; in 1769, Philip having received notice from Woods, seems to have abandoned all intention of recourse against him, and applies to Roderick,. They agree to a reference, and in 1784, Philip *113 PPMae for the first time shews an intention to resort Co Woods, having no prospect of recovering any thing against Roderick. Woods, In consequence of this unreasonable delay, has now no chance to recover against Roderick, and therefore ought not to pay interest.
Another mode was thought of by the Court? and that was, to direct the jury to value a fourth of the ticket 5 but against this a considerable difficulty occurred on the subject of interest, in which we thought we had no right to control the jury.
Upon the whole, I concur with the other Judges In approving the decree.
Decree affirmed.([1])

(1) Hawkins v. Depriest, 4 Munf. 469.